**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MEGAN and TIM MADDEN, NICOLE and PETER CURRY, LAURA WILLIAMS, KRISTA JOHNSON, KAYLA BRITTON and MICHAEL BIRRELL, SHATARA BROWN and STEPHANIE AIKEN, and TRACY and QUINN WILLIAMS,<br><br>          Plaintiffs,<br><br>vs.<br><br>PETLAND SUMMERVILLE, LLC, PETLAND, INC., BRAD PARKER, DEBRA PARKER, LAMAR PARKER, and KRISTEN PARKER,<br><br>          Defendants. | No. 2:20-cv-02953-DCN<br><br>**ORDER** |

The following matter is before the court on defendant Petland, Inc.'s motion to dismiss for lack of personal jurisdiction, ECF No. 7. For the reasons set forth below, the court denies the motion without prejudice.

## I. BACKGROUND

Petland, Inc. is an Ohio-based corporation and franchisor of Petland pet stores. See ECF No. 1-2, Compl. ¶ 42. Plaintiffs are South Carolina citizens who purchased dogs from a franchisee owned and operated pet store in Summerville, South Carolina—Petland Summerville, LLC ("Petland Summerville"). Id. at ¶¶ 7, 49-55, 70, 88, 103, 117, 131, 143, 155. Plaintiffs allege that the purchased dogs later developed various illnesses that were attributable to the breeding practices of the various breeders who sell to Petland, Inc. and Petland Summerville. Id. Plaintiffs further allege that they were enticed into purchasing these dogs based on representations made by employees of

1

Petland Summerville and marketing materials from Petland, Inc. that the dogs came from reputable breeders and were healthy. Id.

On July 15, 2020, plaintiffs filed suit in the Court of Common Pleas for Dorchester County, South Carolina against Petland, Inc., Petland Summerville, and the alleged owners and managers of Petland Summerville—defendants Brad Parker, Lamar Parker, and Kristen Parker (the "Parkers") (collectively, "defendants"). Id. at ¶ 48. Plaintiffs' causes of action include: negligence; gross negligence; negligent misrepresentation; breach of contract; breach of contract accompanied by a fraudulent act; constructive fraud; fraud and misrepresentation; intentional infliction of emotional distress; and violations of the South Carolina Unfair Trade Practices Act.

On August 28, 2020, Petland, Inc. moved to dismiss for lack of personal jurisdiction. ECF No. 7. On November 20, 2020, plaintiffs responded in opposition, ECF No. 27, and on December 14, 2020, Petland, Inc. replied, ECF No. 39. As such, the motion to dismiss has been fully briefed and is now ripe for review.

## II.  STANDARD

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, when a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, "the burden on the plaintiff is simply to make a prima facie showing

2

of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs, 886 F.2d at 676. To determine whether a plaintiff has satisfied this burden, the court may consider both the defendant's and the plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor," and "assuming [plaintiff's] credibility." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993); Combs, 886 F.2d at 676. The court, however, need not "credit conclusory allegations or draw farfetched inferences." Masselli, 215 F.3d 1320 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### III.   DISCUSSION

Petland, Inc. argues that the court should dismiss it from this case pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). Consequently, the only question before the court

is whether the exercise of personal jurisdiction would violate due process.  ESAB Grp., Inc. v. Centricut, LLC, 34 F.Supp.2d 323, 328 (D. S.C. 1999).

Personal jurisdiction over a nonresident defendant can be either specific or general.  See ESAB, 126 F.3d at 623–24.  General jurisdiction is exercised on the basis of the defendant's "continuous and systematic" contacts within the state, even when the suit is unrelated to the defendant's contacts within that state.  See S.C. Code Ann. § 36-2-802; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  Specific jurisdiction is exercised when a cause of action is related to the defendant's activities within the forum state.  See S.C. Code Ann. § 36–2–803; Helicopteros Nacionales, 466 U.S. at 416.  The parties dispute both whether the court has general jurisdiction over Petland, Inc. and whether the court has specific jurisdiction over it.  The court addresses both bases of personal jurisdiction in turn, finding insufficient evidence to exercise either over Petland, Inc.

### A.  General Jurisdiction

Plaintiffs "do not address whether this Court might [] have general jurisdiction," yet "do not concede, however, that such jurisdiction does not exist."  ECF No. 27 at 20, n.1.  "[A] court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what is required to establish specific jurisdiction.  Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012).  The corporate operations within the state must be so substantial and of such an extensive nature as to justify suit against it on all causes of action dealing with matters entirely distinct from the instant litigation.  See Goodyear Dunlop Tires

4

Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) (citing International Shoe, 326 U.S. at 318). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," i.e., its principal place of business or place of incorporation. Id.; see also Daimler AG v. Bauman, 571 U.S. 117, 138 (2014) (holding request to extend general jurisdiction to include every state in which a corporation "engages in a substantial, continuous, and systematic course of business" "unacceptably grasping"). The Supreme Court has "made clear that only in the 'exceptional case'" can a corporation's contacts with a forum other than its principal place of business or place of incorporation be "'so substantial and of such a nature as to render the corporation at home in that State.'" Fidrych v. Marriott Int'l., Inc., 952 F.3d 124, 128, 133 (4th Cir. 2020) (citing Daimler, 571 U.S. at 139).

      The court finds that Petland, Inc.'s contacts with South Carolina are insufficient to make it "at home" in this state. See Fidrych, 952 F.3d at 134 (finding that Marriott was not "at home" in South Carolina for purposes of establishing general jurisdiction when 90 of Marriott's 6,200 hotels were located in South Carolina, including 62 franchises). Petland, Inc. is an Ohio corporation with its principal place of business in Ohio. Petland, Inc. does not own or operate any corporate stores in South Carolina. Petland, Inc.'s only franchise location in South Carolina is Petland Summerville. And, according to plaintiffs, Petland, Inc. has 81 retail locations across the United States, as well as 130 international locations. "Because there is nothing that would distinguish [Petland, Inc.'s] relationship with South Carolina from its relationship with any of the other [states and international locations] where it does business but where it is not incorporated or

5

headquartered, this is not the exceptional case for general jurisdiction contemplated by the Daimler Court." Fidrych, 952 F.3d at 134; see Daimler, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) ("[B]road constructions of general jurisdiction should be generally disfavored.").

Having found no basis for general jurisdiction, the court must determine whether plaintiffs' claims sufficiently relate to Petland, Inc.'s activities within South Carolina to support specific jurisdiction.

### B. Specific Jurisdiction

Plaintiffs allege that Petland, Inc. purposefully availed itself of the privileges of conducting activities in South Carolina when it entered into a franchise agreement to be performed in South Carolina, directed marketing outreach and materials to consumers in South Carolina, and offered its credit card and rewards programs to South Carolina residents. However, these allegations fall short of satisfying the minimum contacts test for specific jurisdiction.

The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)).

The first prong of the test for specific jurisdiction concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 877 (2011) (quoting Hanson, 357 U.S. at 253). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party. Burger King, 471 U.S. at 475. Even a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements "[s]o long as it creates a 'substantial connection' with the forum . . . ." Id. at 475, n.18. The Fourth Circuit has relied on several nonexclusive factors to determine whether a defendant has purposefully availed itself of a forum in the context of a business relationship, including:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted). Sporadic business activity within the forum state "do[es] not amount to purposeful availment of the privilege of conducting activities within" the forum state. Callum v. CVS Health Corp., 137 F.Supp.3d 817, 837 (D. S.C. 2015).

The second prong asks whether the plaintiff's claims "arise out of" forum-related activities. "The Supreme Court has made clear that the second prong of the test for

7

specific jurisdiction—the 'arises out of' requirement—is a necessary element, not a factor that leaves room for discretion . . . ." Wallace, 2019 WL 6170419, at *3 (citing Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017) (citations omitted; emphasis added in Wallace)).  A plaintiff "must show that [his or] her claims arise out of or relate to some specific, purposefully availing activity that [the defendant] conducts in South Carolina." Id.  When there is no connection between a plaintiff's claims and a defendant's contacts with the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Bristol-Myers, 137 S. Ct. at 1781.

For the third prong, courts evaluate the reasonableness of personal jurisdiction by considering "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 946 (4th Cir. 1994).

Plaintiffs argue that the franchise agreement "by its very terms, contemplates significant conduct and contact in the state, including, for example, the submission of a monthly balance sheet, income statement, and detailed ledger in the format Petland supplies." ECF No. 27 at 22.  Plaintiffs cite various cases for their proposition that this single act of entering a long-term franchise agreement with Petland Summerville is sufficient to establish specific personal jurisdiction in South Carolina.  However, in those cases, the litigation arose out of a dispute over the agreement at issue, and thus satisfied both the first and second prongs of the specific jurisdiction test.  For example, in Choice Hotels Int'l, Inc. v. Madison Three, Inc., the defendant corporation purposefully availed

itself to the privilege of conducting activities in Maryland by entering a long-term contract that imposed "continuing significant contractual duties upon the franchisee, e.g., reporting and payment obligations." 23 F. Supp. 2d 617, 621 (D. Md. 1998). The plaintiff claimed that the corporation breached that franchise agreement by failing to maintain payments—meaning the claim arose directly from the corporation entering the contract. Thus, the court found it had specific jurisdiction over the corporation. Similarly, in Ramada Franchise Sys., Inc. v. Hanna Hotel Enterprises, LLC, the defendant purposefully availed itself of the privileges of Ohio by entering a contract to operate a hotel therein. 147 F. Supp. 2d 840 (N.D. Ohio 2001). The plaintiff claimed that the defendant breached that contract, and therefore the litigation directly arose from that contract, justifying specific jurisdiction over the defendant.

      Here, conversely, plaintiffs' argument fails at the second prong because plaintiffs are not bringing suit on the basis of Petland, Inc.'s franchise agreement or its contractual obligations thereunder. Rather, plaintiffs' claims revolve around Petland Summerville's alleged sale of unhealthy puppies, actions far removed from Petland, Inc.'s franchise agreement contact. Because plaintiffs' claims did not arise out of Petland, Inc.'s franchise agreement in South Carolina, this contact cannot support the court's exercise of specific jurisdiction over Petland, Inc. See Walden v. Fiore, 571 U.S. 277, 284 (2014) (Claims to which specific jurisdiction will attach "must arise out of contacts that the 'defendant himself' creates with the forum state," not the conduct of third parties.); Pestmaster Franchise Network, Inc. v. Mata, 2017 WL 1956927, at *4 (N.D. Cal. 2017) (dismissing franchisor based upon a lack of personal jurisdiction, noting that "[t]hough Plaintiff argues for specific personal jurisdiction based on [the defendant]'s franchisee

contacts in California, [p]laintiff has not sufficiently shown how these contacts relate to the claims now in dispute."); Oddi v. Mariner-Denver, Inc., 461 F. Supp. 306, 310 (S.D. Ind. 1978) ("[T]he mere fact that [the defendant] may have subsidiaries, franchisees or licensees in this state does not subject it to the jurisdiction of this state.") (citing Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336, (1925)).[1]

Plaintiffs' argument that Petland, Inc.'s marketing efforts subject it to personal jurisdiction in South Carolina is similarly unavailing. Plaintiffs argue that Petland Summerville "presented [p]laintiffs with marketing materials created by Petland[, Inc.] or required as part of Petland[, Inc.]'s uniform operating system," and these marketing materials falsely claimed that Petland franchisee puppies were healthy and from reputable breeders. ECF No. 27 at 10. Plaintiff's argument, however, fails to show how Petland, Inc. "purposefully directed [its] activities at residents of the forum." Burger King, 471 U.S. at 472). Plaintiffs do not allege, and this court has no reason to believe, that Petland, Inc.'s marketing activities were focused on or targeted South Carolina customers. Indeed, plaintiffs appear to acknowledge that Petland, Inc.'s marketing efforts were not specifically directed at South Carolina customers, asserting that "[t]hese marketing techniques [] were dictated by [Petland, Inc.], and were not unique to the Summerville franchise." ECF No. 27 at 26. Such marketing efforts broadly directed at the United

---

[1] Plaintiffs also argue that under the franchise agreement "puppies are purchased from suppliers that have been approved by Petland[, Inc.]" ECF No. 27 at 18. Petland, Inc. confirms that its franchisees must select breeders that meet the certain minimum criteria, such as being certified by the United States Department of Agriculture. Such quality control measures are typical of a franchisor-franchisee relationship. Plaintiffs' claims, however, cannot be said to "arise from" Petland, Inc. including these minimum standards for breeder selection in its franchise agreements, and this fact does not warrant a different outcome.

States and internationally do not show Petland, Inc.'s intent to avail itself of the privilege of conducting activities in South Carolina. See ESAB, 126 F.3d at 625 (rejecting claim of specific jurisdiction where defendant did not direct its activities at South Carolina but instead "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina"); Holliday v. Nissan Motor Co., Ltd., 2019 WL 2612771, at *3 (D. S.C. June 26, 2019) ("Importantly any 'marketing' at issue must be directed at South Carolina, not at the United States generally"). Thus, plaintiffs' argument regarding Petland, Inc.'s marketing efforts fails at the first prong.

      Finally, plaintiffs argue that Petland, Inc.'s credit card and rewards programs justify specific jurisdiction in this instance. Specifically, plaintiffs maintain that Petland, Inc. directed its activities at South Carolina customers by offering credit cards to South Carolina customers to finance their puppies and encouraging repeat business via its credit card reward points program. However, even if these activities show purposeful availment to satisfy the first prong of the test, the argument fails at the second prong. Again, plaintiffs' claims relate to Petland Summerville's alleged sale of unhealthy puppies and related misrepresentations. The court fails to see how these claims are connected to Petland, Inc.'s offering its credit card and rewards programs, even if certain plaintiffs in this action participated in those programs. Certainly it cannot be said that Petland, Inc.'s credit card and rewards programs gave rise to Petland Summerville's alleged sale of unhealthy puppies or misrepresentations related thereto. Because the credit card and rewards programs have no relationship to the claims asserted by plaintiffs in this case, the court cannot consider these contacts in its jurisdictional analysis. See Fidrych, 952 F.3d

at 139 ("Because the Plaintiffs' claims do not arise from them, Marriott's hotel-related connections to South Carolina are not relevant to our specific-jurisdiction inquiry.").

Because plaintiffs' allegations of specific jurisdiction over Petland, Inc. fail at the first and second prongs of the test, the court need not address the third prong, whether the exercise of personal jurisdiction would be reasonable. As currently alleged, Petland, Inc.'s contacts with South Carolina are insufficient to permit the exercise of specific or general jurisdiction. Plaintiffs, however, request jurisdictional discovery into Petland, Inc.'s "advertising, promotional, and marketing materials" and "operating model" to better support plaintiffs' allegations of general and specific jurisdiction. ECF No. 27 at 31-32. District courts have "broad discretion" in their resolution of discovery issues that arise in cases before them. Mylan Labs, 2 F.3d at 64. "When the [p]laintiff's claim does not appear frivolous, a district court should ordinarily allow discovery on jurisdiction in order to aid the [p]laintiff in discharging the burden of establishing the court's jurisdiction." College v. W.R. Grace & Co., 143 F.R.D. 628, 644 (D. S.C. 1992). The court therefore grants plaintiffs' request for limited jurisdictional discovery.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES WITHOUT PREJUDICE** the motion to dismiss for lack of personal jurisdiction. **IT IS ORDERED** that the parties shall conduct limited jurisdictional discovery with a deadline of May 1, 2021. Discovery directed at Petland, Inc. shall be confined solely to the issue of personal jurisdiction.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**January 28, 2021
Charleston, South Carolina**

13