# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| MEGAN and TIM MADDEN, NICOLE and PETER CURRY, LAURA WILLIAMS, KRISTA JOHNSON, KAYLA BRITTON and MICHAEL BIRRELL, SHATARA BROWN and STEPHANIE AIKEN, and TRACY and QUINN WILLIAMS, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:20-cv-02953-DCN |
| vs. | ) ) | **ORDER** |
| PETLAND SUMMERVILLE, LLC, PETLAND, INC., BRAD PARKER, DEBRA PARKER, LAMAR PARKER, and KRISTEN PARKER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

The following matter is before the court on plaintiffs Megan and Tim Madden, Nicole and Peter Curry, Krista Johnson, Kayla Britton, Michael Birrell, Shatara Brown, Stephanie Aiken, and Tracy, Laura, and Quinn Williams' ("plaintiffs") motion for an extension, to stay deadlines, and to compel, ECF No. 57. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

Defendant Petland, Inc. is an Ohio-based corporation and franchisor of Petland pet stores. Plaintiffs are South Carolina citizens who purchased puppies from a Petland store in Summerville, South Carolina owned and operated by a franchisee, defendant Petland Summerville, LLC ("Petland Summerville"). Plaintiffs allege that their dogs developed various illnesses that were attributable to the breeding practices of the breeders who sell to puppies to Petland, Inc. and Petland Summerville. Plaintiffs further allege

1

that they were enticed into purchasing these puppies through representations made by employees of Petland Summerville and marketing materials from Petland, Inc. that the dogs came from reputable breeders and were healthy.  On July 15, 2020, plaintiffs filed suit in the South Carolina Court of Common Pleas for Dorchester County against Petland, Inc., Petland Summerville, and the alleged owners and managers of Petland Summerville —defendants Brad Parker, Lamar Parker, and Kristen Parker (the "Parkers").  ECF No. 1-2, Compl.  Plaintiffs' causes of action include: negligence; gross negligence; negligent misrepresentation; breach of contract; breach of contract accompanied by a fraudulent act; constructive fraud; fraud and misrepresentation; intentional infliction of emotional distress; and violations of the South Carolina Unfair Trade Practices Act.  On August 14, 2020, Petland Summerville and the Parkers removed the action to this court.  ECF No. 1.

On August 28, 2020, Petland, Inc. filed a motion to dismiss for lack of personal jurisdiction.  ECF No. 7.  On January 28, 2021, the court denied the motion without prejudice, finding that Petland, Inc.'s contacts with South Carolina, as alleged, were insufficient for the court to exercise personal jurisdiction over it (the "Personal Jurisdiction Order").  ECF No. 43.  Additionally, the court granted plaintiffs' request for limited jurisdictional discovery with a deadline of May 1, 2021.  Id.  On May 17, 2021, plaintiffs filed the instant motion to compel, to extend jurisdictional discovery deadlines, and to stay briefing deadlines on Petland, Inc.'s renewed motion to dismiss.  ECF No. 57.  On June 1, 2021, Petland, Inc. responded in opposition.  ECF No. 61.  The deadline for plaintiffs to file a reply was June 8, 2021; nevertheless, at 7:28 P.M. on June 9, 2021— one day after the deadline to do so—plaintiffs filed a reply.  ECF No. 62.  The court held a hearing on the matter on June 17, 2021.  The motion is now ripe for review.

## II. STANDARD

"The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 526 (D.S.C. 2018). Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information sought is relevant if it 'bears on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case.'" Ferira v. State Farm Fire & Cas. Co., 2018 WL 3032554, at *1 (D.S.C. June 18, 2018) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "[I]t is well understood that pursuant to Rule 26(b)(1) relevancy is construed very liberally." Nat'l Credit Union Admin. v. First Union Capital Markets Corp., 189 F.R.D. 158, 161 (D. Md. 1999). In determining proportionality, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The law is clear that "[t]he scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995). As such, the resolution of a motion to compel sits comfortably within the district court's "substantial discretion in managing discovery." Lone Star Steakhouse & Saloon, Inc. v. Alpha Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995).

## III. DISCUSSION

Plaintiffs contend that Petland, Inc. has failed to satisfy its discovery obligations in two respects. First, plaintiffs argue that Petland, Inc. used "dilatory tactics and the pretext of obtaining a consent confidentiality order" to limit plaintiffs' opportunity to conduct jurisdictional discovery. ECF No. 57 at 1. Accordingly, plaintiffs request that the court extend the May 1, 2021 deadline for jurisdictional discovery and stay deadlines on Petland, Inc.'s renewed motion to dismiss, ECF No. 56. Second, plaintiffs argue that Petland, Inc. improperly objected to plaintiffs' requests for jurisdictional discovery and therefore ask the court to compel Petland, Inc. to fully respond to their requests. The court discusses plaintiffs' contentions in reverse order.

**A. Motion to Compel**

Plaintiffs complain that Petland, Inc. "repeatedly objected and refused to answer or submit substantive responses" to plaintiffs' jurisdictional discovery requests. ECF No. 57 at 6. In their initial motion, plaintiffs state their position generally, arguing that they are entitled to satisfactory discovery responses yet only pointing to one specific request that Petland, Inc. did not answer or did not answer fully. In their untimely reply, plaintiffs identify additional requests for which they maintain Petland, Inc.'s responses are deficient. Given the complexity of the law on this front and the importance of this motion to plaintiffs' case, the court has resolved to consider plaintiffs' reply and the specific requests advanced therein despite their untimeliness.[1]

---

[1] Plaintiffs have given the court ample reason to deny their motion outright. The ordinary rule in federal courts is that an argument raised for the first time in a reply brief will not be considered. See United States v. Williams, 445 F.3d 724, 736 n. 6 (4th Cir. 2006). Moreover, under Fed. R. Civ. Pro. 6(b)(1), a court should only admit a late filing "for good cause," including "if the party failed to act because of excusable neglect."

Before turning to the specific discovery requests and accompanying responses at issue, the court frames the dispute by outlining the proper scope of jurisdictional discovery here. As the court discussed in its Personal Jurisdiction Order, specific jurisdiction exists when a plaintiff's cause of action arises out of or relates to a defendant's forum-state activities. ECF No. 43 at 4 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).[2] Unable to discern with certainty whether plaintiffs' claims arise from or relate to Petland, Inc.'s purposefully availing contacts with South Carolina, the court permitted plaintiffs to engage in jurisdictional discovery. ECF No. 43 at 12. Now, Petland, Inc. articulates the relevant jurisdictional question as whether Petland, Inc. was "involved in" the specific transactions in which Petland Summerville sold the allegedly unhealthy puppies to plaintiffs. ECF No. 61 at 8–9. This formulation frames the issue too narrowly and thereby impermissibly restricts the discovery plaintiffs are authorized to obtain.

The Supreme Court recently offered guidance on the specific jurisdiction requirement that there exist a connection between a plaintiff's claims and defendant's activities. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017 (2021). In Ford, the Court reaffirmed the axiom that, for specific jurisdiction purposes, a plaintiff's

---

Plaintiffs' counsel failed to acknowledge the untimeliness of the reply in their papers and, at the hearing, chalked up their tardiness to a scheduling error. The court is mindful that ordinary mistakes happen; nevertheless, having now expended their mulligan, plaintiffs should likewise be mindful that the court will not be so forgiving to repeat offenders.

[2] Plaintiffs argue that the Personal Jurisdiction Order "authorized jurisdictional discovery both as to specific and general jurisdiction[.]" ECF No. 62 at 5. Not so. The court made explicit in its order that "Petland Inc.'s contacts with South Carolina are insufficient to make it 'at home' in this state," meaning that there is "no basis for general jurisdiction" here. ECF No. 43 at 5–6. In other words, general jurisdiction is off the table. Accordingly, the court denies plaintiffs' motion to compel to the extent to it seeks information wholly unrelated to plaintiffs' claims.

claim must "arise out of <u>or relate to</u> the defendant's contacts with the forum." <u>Id.</u> at 1026 (emphasis in original) (quoting <u>Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.</u>, 137 S. Ct. 1773, 1780 (2017)). But the court dispelled the notion that only a causal relationship between the claim and contact will do: "we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." <u>Id.</u> The specific jurisdiction test is more expansive (and as a result, more nebulous), supporting a court's exercise of jurisdiction over an out-of-state defendant where that defendant's in-state contacts "relate to" the plaintiff's claim.

Accordingly, plaintiffs may look beyond Petland Inc.'s involvement (or non-involvement) in the specific transactions in which plaintiffs purchased the allegedly unhealthy puppies from Petland Summerville. Petland, Inc. could have engaged in a range of activities—separate and apart from the literal sales of the allegedly unhealthy puppies—that "relate to" plaintiffs' claims. In other words, a purposefully availing activity may "relate to" the sale of allegedly unhealthy puppies without constituting "involvement in" the specific transaction by which the puppy was sold. For example, if Petland, Inc. directed a marketing campaign to South Carolinians, boasting well-bred, hearty puppies for sale at Petland stores, that forum-state contact would support specific jurisdiction because it "relates to" plaintiffs' claim that Petland Summerville sold unhealthy puppies. Likewise, if Petland, Inc. set certain standards concerning the methods by which a franchisee must acquire puppies or advertise their sale, those contacts, too, would likely support jurisdiction. These claim-related contacts would support specific jurisdiction over Petland, Inc. even if Petland, Inc. had no role in the

specific transactions by which Petland Summerville sold plaintiffs their puppies. As the Supreme Court in Ford stated, "When a company . . . serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." 141 S. Ct. at 1022.

That is not to say that the jurisdictional inquiry is boundless. The Supreme Court made clear in Ford that its relatively expansive approach "does not mean anything goes." Id. at 1026. "[T]he phrase 'relate[s] to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Id. Applying that law to the case at hand, the relevant jurisdictional inquiry is whether any of Petland, Inc.'s activities in South Carolina "relate to" Petland Summerville's sale of allegedly unhealthy puppies to plaintiffs. Therefore, plaintiffs can investigate any activities that Petland, Inc. directed at South Carolina and that reasonably "relate to" the sale of puppies. By way of example, this would include any South Carolina-directed efforts to market puppies for sale, to impose standards for the sale of puppies to which Petland, Inc. franchisees must adhere, or to enact policies that might influence the ways in which a franchisee sells puppies. With this guidepost in mind, the court turns to the specifically disputed discovery requests.

        1. **Interrogatory No. 1**

Plaintiffs' first interrogatory asks Petland, Inc. to "[i]dentify each communication between [Petland, Inc.] and any person involving the franchise located at 975 Bacons Bridge Road, Summerville, South Carolina between January 1, 2010 and the date of your response." ECF No. 61-1 at 8. The court grants plaintiffs' motion to compel with respect to this request but narrows the scope to include only those communications which relate

to the sale of puppies, in accordance with the above discussion. Further, the parties indicated at the hearing that the Parkers acquired Petland Summerville in 2017. Accordingly, the court also narrows the request's relevant time period, such that it extends back to January 1, 2017. Petland Inc.'s objections to the contrary are overruled.

### 2. Interrogatory No. 2

Plaintiffs' second interrogatory asks Petland, Inc. to "identify any training program offered, administered, coordinated, created or managed by [Petland Inc.] in relation to any business activity or franchise agreement to be carried out in whole or in part in the State of South Carolina." Id. at 9. Again, this request warrants response but sweeps too broadly. Therefore, the court grants the motion to compel with respect to this request but again narrows its scope to include only those trainings that reasonably relate to the sale of puppies since January 1, 2017.[3]

### 3. Interrogatory No. 3

Interrogatory No. 3 asks Petland, Inc. to "identify any lease, sublease, or other agreements, irrespective of whether they have been modified, terminated, transferred, or otherwise altered involving [Petland, Inc.] and the property located at 975 Bacons Bridge Road, Summerville, South Carolina." Id. at 10. Again, the court grants the motion with respect to this request but narrows its scope to include only those agreements that reasonably relate to the sale of puppies. For example, subjection "j" of this interrogatory requests details relating to constructions plans sent or received by Petland, Inc.

---

[3] The court notes that Petland Inc., notwithstanding its objections, provided a response to Interrogatory No. 2. To the extent that its response is incomplete in light of this order's instructions, Petland Inc. must supplement it. Of course, if the response is complete, there is nothing for the court to compel.

concerning Petland Summerville. At the hearing, plaintiffs indicated that Petland, Inc. assisted in modifying Petland Summerville's store to accommodate a more robust effort to sell puppies. If Petland, Inc. were in possession of plans indicating as much, assuming the truth of plaintiffs' theory, information about those plans would be discoverable, given that they relate to the sale of puppies and thus plaintiffs' claims.[4]

### 5. Request for Production No. 7

Finally, in their seventh request for production, plaintiffs seek: "All Documents or Communications related to the advertising, marketing, and sale of puppies or other animals at the franchise located at 975 Bacons Bridge Road, Summerville, South Carolina between January 1, 2010 and the date of your response." Id. at 42. The court narrows this request to include only those documents and communications that relate to the sale of puppies since January 1, 2017 and, to the extent that Petland, Inc. has not produced all responsive, nonprivileged documents, grants the request.[5]

### B. Motion for an Extension and to Stay Deadlines

Plaintiffs request that the court extend the deadline for jurisdictional discovery and stay deadlines on Petland, Inc.'s renewed motion to dismiss, ECF No. 56, because Petland, Inc. has "wasted substantial time and resources to avoid complying with the Court's Order granting Plaintiffs the right to conduct jurisdictional discovery." ECF No. 57 at 2. Two developments have mooted this request. First, the court has now ordered

---

[4] Again, Petland, Inc. did provide a response to this interrogatory. To the extent that its answer is accurate and complete, Petland, Inc. need not respond further.

[5] At the hearing, plaintiffs indicated that Petland, Inc. retains a percentage of the profits from Petland Summerville's sale of puppies. Any documents memorializing a profit-sharing agreement between Petland, Inc. and Petland Summerville would be responsive to Request for Production No. 7 and should be produced.

Petland, Inc. to comply with plaintiffs' outstanding discovery requests in accordance with this order, such that extending the deadline for jurisdictional discovery is no longer necessary. Second, at the hearing on the motion, the court alerted the parties to the recent development in personal jurisdiction jurisprudence announced by the Supreme Court in Ford. 141 S. Ct. 1017. After some discussion, Petland, Inc. requested the opportunity to incorporate the new law into its argument for dismissal by filing an updated motion to dismiss, and the court agreed. Accordingly, the court dismisses Petland, Inc.'s renewed motion to dismiss without prejudice, ECF No. 57, and permits Petland, Inc. to file an updated motion to dismiss. As such, plaintiffs' request to extend related deadlines is moot. Plaintiffs may respond to Petland, Inc.'s impending motion to dismiss according to the regular procedure.

In sum, the court grants plaintiffs' motion to compel in accordance with the instructions of this order. Petland, Inc. shall have until Monday, August 2, 2021 to produce complete responses to plaintiffs' outstanding discovery requests. Further, Petland, Inc. shall have until Monday, August 16, 2021 to file a renewed motion to dismiss, if it so chooses.

## IV.  CONCLUSION

For the foregoing reasons the court **GRANTS IN PART** the motion to compel.

**AND IT IS SO ORDERED.**

                **DAVID C. NORTON**
                **UNITED STATES DISTRICT JUDGE**

**June 23, 2021**
**Charleston, South Carolina**