**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MEGAN and TIM MADDEN; NICOLE and PETER CURRY; LAURA WILLIAMS; KRISTA JOHNSON; KAYLA BRITTON and MICHAEL BIRRELL; SHATARA BROWN and STEPHANIE AIKEN; and TRACY and QUINN WILLIAMS, ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | No. 2:20-cv-02953-DCN |
| vs. ) ) | **ORDER** |
| PETLAND SUMMERVILLE, LLC; PETLAND, INC.; BRAD PARKER; DEBRA PARKER; LAMAR PARKER; and KRISTEN PARKER, ) ) ) ) ) | |
| Defendants. ) ) | |

The following matter is before the court on defendant Petland, Inc.'s ("Petland, Inc.") renewed motion to dismiss, ECF No. 70. For the reasons set forth below, the court grants the motion.

**I.   BACKGROUND**

Petland, Inc. is an Ohio-based corporation and franchisor of Petland pet stores. See ECF No. 1-2, Compl. ¶ 42. Plaintiffs Megan and Tim Madden, Nicole and Peter Curry, Laura Williams, Krista Johnson, Kayla Britton, Michael Birrell, Shatara Brown, Stephanie Aiken, and Tracy and Quinn Williams ("plaintiffs") are South Carolina citizens who purchased dogs from a franchisee-owned and operated pet store in Summerville, South Carolina—Petland Summerville, LLC ("Petland Summerville"). Id. ¶¶ 7, 49–55, 70, 88, 103, 117, 131, 143, 155. Plaintiffs allege that the purchased dogs later developed various illnesses that were attributable to the breeding practices of the various breeders

1

who sell to Petland, Inc. and Petland Summerville. Id. Plaintiffs further allege that they were enticed into purchasing these dogs based on representations made by employees of Petland Summerville that the dogs come from reputable breeders and were healthy. Id.

On July 15, 2020, plaintiffs filed suit in Court of Common Pleas for Dorchester County, South Carolina against Petland, Inc., Petland Summerville, and the alleged owners and managers of Petland Summerville—defendants Brad Parker, Debra Parker, Lamar Parker, and Kristen Parker (the "Parkers") (collectively, "defendants").[1] Id. ¶ 48. Plaintiffs' causes of action include: negligence; gross negligence; negligent misrepresentation; breach of contract; breach of contract accompanied by a fraudulent act; constructive fraud; fraud and misrepresentation; intentional infliction of emotional distress; and violations of the South Carolina Unfair Trade Practices Act.

On August 28, 2020, Petland, Inc. moved to dismiss for lack of personal jurisdiction. ECF No. 7. On January 28, 2021, the court denied the motion without prejudice, finding that Petland, Inc.'s contacts with South Carolina, as alleged, were insufficient for the court to exercise specific or general jurisdiction over it (the "January Order"). ECF No. 43. Nevertheless, the court granted plaintiffs request for limited jurisdictional discovery with a deadline of May 1, 2021. Id.

On August 16, 2021, Petland, Inc. filed a renewed motion to dismiss. ECF No. 70. On September 7, 2021, plaintiffs responded in opposition, ECF No. 74, and on September 21, 2021, Petland, Inc. replied, ECF No. 77. The court held a hearing on the

---

[1] In their answer, Brad Parker, Lamar Parker, and Kristen Parker only admit that "some" of these alleged defendants are members or owners of Petland Summerville. ECF No. 6 ¶ 48.

motion on October 21, 2021. ECF No. 78. As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, when a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Id. at 676. To determine whether a plaintiff has satisfied this burden, the court may consider both the defendant's and the plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor," and "assuming [plaintiff's] credibility." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000) (unpublished table opinion); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993); Combs, 886 F.2d at 676. The court, however, need not "credit conclusory allegations or draw farfetched inferences." Masselli, 215 F.3d 1320 (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### III. DISCUSSION

Petland, Inc. argues that the court should dismiss it from this case pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Grp., Inc. v. Centricut, Inc. ("ESAB I"), 126 F.3d 617, 622 (4th Cir. 1997). In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). Consequently, the only question before the court is whether the exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC ("ESAB II"), 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

Personal jurisdiction over a nonresident defendant can be either specific or general. See ESAB I, 126 F.3d at 623–24. General jurisdiction is exercised on the basis of the defendant's "continuous and systematic" contacts within the state, even when the suit is unrelated to the defendant's contacts within that state. See S.C. Code Ann. § 36-2-802; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). In its January Order, the court found that Petland, Inc.'s contacts with South Carolina were insufficient to support general jurisdiction and granted limited jurisdictional discovery to determine whether its contacts could support specific jurisdiction. ECF No. 43. The

parties do not argue that their jurisdictional discovery affects the general jurisdiction analysis, and the court is satisfied that it did not. As such, the only question before the court is whether discovery revealed any basis for the court's exercise of specific jurisdiction over Petland, Inc.

Specific jurisdiction is exercised when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales, 466 U.S. at 416. The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether the defendant purposely availed itself of the privileges of conducting activities in the forum state and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claims arise out of or relate to those forum-state activities, and (3) whether the exercise of jurisdiction is constitutionally reasonable. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)). To show that the exercise of specific jurisdiction over a defendant comports with due process, a plaintiff "must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

The Supreme Court recently clarified that the second prong of the specific jurisdiction inquiry—requiring that the plaintiff's suit arise from or relate to the defendant's forum-state contacts— does not "require proof of causation." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1026 (2021). In other words, a plaintiff need not show that her claim "came about because of the defendant's in-state conduct." Id. The specific jurisdiction test is more expansive (and as a result, more

nebulous), supporting a court's exercise of jurisdiction over an out-of-state defendant where that defendant's in-state contacts "relate to" the plaintiff's claim. Id. (emphasis in original). Even so, the Supreme Court made clear in Ford that not every connection between a plaintiff's claim and a defendant's contacts will do. Id. "[T]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Id. At bottom, specific jurisdiction requires a direct, meaningful connection between the defendant's forum-state contacts and the plaintiff's claim. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1781 (2017). In determining whether such a connection exists, the court should "direct [its] focus to the quality and nature of [the defendant's] contacts." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003).

 Petland, Inc. concedes, as it must, that it has at least some purposefully availing contacts with South Carolina in connection with its franchise agreement with Petland Summerville that satisfy the first prong of the three-part specific jurisdiction test. The crux of Petland, Inc.'s argument against the court's exercise of specific jurisdiction falls under the second prong of the test. In other words, Petland, Inc. argues that plaintiffs' claims are unrelated to its franchise agreement contacts. Specifically, Petland, Inc. argues that plaintiffs' lawsuit involves Petland Summerville's sale of unhealthy puppies—puppies that Petland, Inc. was not involved in breeding, selecting, purchasing, reselling, or making any representations to plaintiffs.

 Plaintiffs, on the other hand, maintain that Petland, Inc.'s contacts with Petland Summerville sufficiently relate to their claims. Specifically, plaintiffs argue that they

> [(1)] relied on various statements, signage, marketing materials, and claims that [Petland, Inc.] caused to be published, posted, and disseminated in a

>    variety of forms in South Carolina; [and (2)] relied on sales tactics that [Petland, Inc.] instructed the franchise to use, and other representations that puppies sold in the store were healthy, routinely checked by veterinarians, properly vaccinated, and came from the best breeders who operate in conformance with Petland[, Inc.]'s purportedly rigorous and exacting standards and which Petland[, Inc.] claims its store must strictly comply with.

ECF No. 75 at 7. The court agrees with Petland, Inc. that plaintiffs have not shown a direct, meaningful connection between Petland, Inc.'s forum-state contacts and plaintiffs' claims.

As an initial matter, much of plaintiffs' response in opposition to the motion to dismiss is effectively based on the argument that Petland, Inc.'s general franchise-related activities with Petland Summerville subject it to specific personal jurisdiction in South Carolina. Not so. Plaintiffs do not argue—and the court has not located any authority to suggest—that the Ford Motor Co. decision altered the traditional rule that "the mere existence of a garden-variety parent-subsidiary or franchisor-franchisee relationship, even if plaintiff has established such, is not sufficient to establish jurisdiction." Ross v. Colo. Outward Bound Sch., Inc., 603 F. Supp. 306, 310 (W.D.N.Y. 1985); see Pestmaster Franchise Network, Inc. v. Mata, 2017 WL 1956927, at *4 (N.D. Cal. May 11, 2017) (dismissing franchisor based upon a lack of personal jurisdiction and holding that "[t]hough Plaintiff argues for specific personal jurisdiction based on AAAC's franchisee contacts in California, Plaintiff has not sufficiently shown how these contacts relate to the claims now in dispute"); Oddi v. Mariner-Denver, Inc., 461 F. Supp. 306, 310 (S.D. Ind. 1978) (finding that the mere fact that a franchisor had franchisees within the forum state was insufficient to permit the exercise of jurisdiction over the franchisor). Although there are exceptions to this rule when the franchisee is merely an agent or alter-ego of the

7

franchisor such that the former's actions should be attributed to the latter, plaintiffs notably have not made such an argument in this case. Thus, the fact that Petland, Inc. is allegedly "actively engaged in how the franchise conducts the business" does not, in and of it itself, justify jurisdiction over Petland, Inc. See ECF No. 75 at 20. Accordingly, Petland, Inc.'s activities that serve its Petland Summerville franchise but are unrelated to plaintiffs' claims have no bearing on the court's specific jurisdictional analysis. For example, Petland, Inc.'s involvement in Petland Summerville's cleaning protocols, merchandise inventory, financial reporting, store fixtures, shelving layout, and site work and construction do not support this court's exercise of jurisdiction over Petland, Inc.

Nevertheless, plaintiffs argue that certain of Petland, Inc.'s franchise activities are directly related to plaintiffs' claims regarding Petland Summerville's alleged sale of unhealthy puppies and related misrepresentations. Specifically, plaintiffs allege that Petland, Inc. sets the standards that its franchisees—including Petland Summerville—are required to follow when the franchisees acquire, care for, market, and sell puppies. In so arguing, plaintiffs often mischaracterize the evidence and, even when they do not, plaintiffs fail to show how Petland, Inc.'s standard-setting practices sufficiently relate to plaintiffs' claims. To begin, plaintiffs assert that Petland, Inc. required its franchisees to use certain sales tactics, including the tactic of withholding puppy prices from customers until a certain point during the customer interaction. This fact clearly fails to satisfy the relatedness requirement under the specific jurisdiction test. None of plaintiffs' claims are based on allegations that Petland Summerville used "high-pressure" sales tactics; their claims are based on the quality of the puppies Petland Summerville sold as opposed the quality of puppies they advertised. ECF No. 75 at 22. Petland, Inc.'s imposition of

standards across its franchisees to facilitate sales is simply too far removed from the claims in this case to satisfy the second prong of the specific jurisdiction inquiry.

Petland, Inc. also requires that each of its franchisees have "a local consulting veterinarian who performs weekly examinations on new arrivals, completes a Puppy/Kitten Care Record to document each pet's health and sets the protocol for in-store preventative health measures." ECF No. 75 at 9–10. However, as Petland, Inc. points out, its requirement under its Franchise Agreement that franchisees have a local consulting veterinarian is not the equivalent of a Petland, Inc. guarantee to franchisee customers that any puppies purchased from its franchisees are veterinarian-examined or certified as healthy. Plaintiffs have not alleged or cited any evidence to suggest that plaintiffs themselves saw or relied on the Franchise Agreement in purchasing their puppies. Even if they had, the court finds that the veterinarian requirement imposed by Petland, Inc. under the Franchise Agreement is merely a quality control measure typical of a franchisor-franchisee relationship, and the connection between this quality control measure and plaintiffs' claims is simply too tenuous to support jurisdiction. Plaintiffs argue that "Petland[, Inc.] could have avoided [liability] by availing itself of the remedies in its contract [but instead] allowed the franchise to operate in violation of its mandatory contract provisions, and effectively licensed the franchise to continue operating without consequence or reprimand." ECF No. 75 at 32. Ultimately, however, enforcement of the Franchise Agreement rights and obligations is a contractual issue between the franchisor and franchisee. While the Franchise Agreement allows Petland, Inc. to enforce certain contractual rights relating to franchisee conduct, plaintiffs did not—and indeed could not—allege that Petland, Inc. owed them a duty to exercise such rights. Any duties or

9

obligations arising from the Franchise Agreement are between Petland, Inc. and the franchisee and do not run to plaintiffs. Therefore, plaintiffs cannot rely on Petland, Inc.'s alleged failure to enforce the Franchise Agreement as a basis for personal jurisdiction over Petland, Inc.

Plaintiffs also contend that Petland, Inc. provides and has control over Petland Summerville's marketing and advertising materials, including materials boasting that franchisee puppies are from humane breeders, healthy, and vet-checked multiple times. However, during the hearing, counsel for plaintiffs conceded that, to their knowledge, Petland, Inc. did not require its franchises to distribute any specific marketing or advertising materials and therefore did not mandate publication of materials regarding the physical condition of franchisee puppies. Counsel for Petland, Inc. confirmed that they likewise were aware of no such requirement, and Petland, Inc. instead merely provides a repository of marketing materials from which franchisees may select for use. The court fails to see how Petland, Inc.'s general provision of marketing services to ensure branding consistency across its franchisees is beyond that of a garden-variety franchisor-franchisee relationship. To the extent Petland Summerville selected marketing materials from Petland, Inc.'s catalog for use in South Carolina that allegedly misrepresented the puppies it actually sold,[2] those actions are Petland Summerville's alone and cannot be

---

[2] As the court explained in its January Order, Petland, Inc. did not supply the puppies that Petland Summerville sold or select its breeders. Instead, it set certain minimum criteria for breeders that its franchisees used, such as being certified by the United States Department of Agriculture. Plaintiffs do not provide any evidence gleaned from jurisdictional discovery to show that Petland, Inc. had any greater involvement in Petland Summerville's selection of puppies. Plaintiffs' claims cannot be said to arise from or relate to Petland, Inc.'s minimum standards for breeder selection in its franchise agreements. Again, this quality control measure is not a guarantee to franchisee customers.

attributed to Petland, Inc. for jurisdictional purposes. See Walden v. Fiore, 571 U.S. 277, 284 (2014) (finding that claims to which specific jurisdiction will attach "must arise out of contacts that the 'defendant himself' creates with the forum state," not the conduct of third parties).

Moreover, although plaintiffs argue that Petland, Inc. "is directing its marketing campaign to South Carolina consumers" in a manner that supports specific jurisdiction, ECF No. 75 at 12, Petland, Inc. strongly challenges that assertion. In support of its position, Petland, Inc. cites a declaration of its compliance analyst, Dale Davis, to support its claim that "it does not have any marketing materials, videos, training or guidance relating to dog sales that were created specifically for Petland Summerville." ECF No. 77 at 8 (citing ECF No. 56-3, Davis Aff. ¶ 3). Plaintiffs cite only one fact to support its allegation that Petland, Inc. directed its marketing efforts at South Carolina. Specifically, plaintiffs reference one "custom made marketing signage" that Petland, Inc. allegedly sent to Petland Summerville to be printed and displayed in the store that "directs South Carolinians to [Petland Summerville's] Facebook Page." ECF No. 75 at 15 (citing ECF No. 75-6 at 0352–53). This "signage" simply says "Like us on Facebook! Facebook.com/PetlandSummerville." ECF No. 75-6 at 0352–53. Petland, Inc.'s provision of a general Petland-branded template that any of its franchisees could use to direct their customers to their local Facebook page is simply not a marketing effort by Petland, Inc. to target South Carolina customers. Other than the link that any franchisee could input with its Facebook website address, nothing about this advertisement is unique to South Carolina or the Petland Summerville location. At best, plaintiffs' evidence tends to show that Petland, Inc. provided marketing resources and assistance to its franchise

11

locations to ensure uniformity of its marketing materials. It does not show any effort by Petland, Inc. to create a market for its products in South Carolina, as opposed to the United States generally. See ESAB I, 126 F.3d at 625 (rejecting claim of specific jurisdiction where defendant did not direct its activities at South Carolina but instead "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina"); Holliday v. Nissan Motor Co., Ltd., 2019 WL 2612771, at *3 (D.S.C. June 26, 2019) ("Importantly, any 'marketing' at issue must be directed at South Carolina, not at the United States generally."). The marketing efforts by Petland, Inc. that plaintiffs cite are typical for a franchise relationship and not a sufficient contact with South Carolina to support personal jurisdiction.

Finally, plaintiffs argue that Petland, Inc.'s representatives traveled to South Carolina to evaluate and enforce its standards at Petland Summerville and that this contact supports personal jurisdiction.[3] One of these visits is discussed in a January 13, 2020 email from Petland, Inc. representative Carin Barker ("Barker") to defendant Brad Parker. In that email, Barker notes that in her "visit a little over month ago [sic]," they "talked a lot about the need to have an attending veterinarian. Something that every Petland [franchisee] has or should have." ECF No. 75-4 at 0492–95. Barker expresses her concern that Petland, Inc. "still ha[d] no veterinarian" to her knowledge as of the date of the email and yet they were "still sending home puppies without an exam." Id. She

---

[3] Plaintiffs further argue that the court has specific jurisdiction over Petland, Inc. because it sends its agents to South Carolina to provide in-person services to the franchise. Again, these general franchise-related activities with Petland Summerville do not satisfy the second prong of the test for specific jurisdiction and are insufficient to subject Petland, Inc. to personal jurisdiction in South Carolina.

further notes that Petland Summerville "state[s] on [its] Facebook page that all Petland's [sic] have a 'local' veterinarian exam the puppies and update their health record," and comments that "[t]his can be misleading to the community and all potential families taking home a puppy from your store." Id. The court does not consider Petland, Inc.'s travel to this state a sufficient contact to support personal jurisdiction because it does not relate to the claims of the instant lawsuit. Petland, Inc. traveled to the forum state to ensure Petland Summerville's compliance with its Franchise Agreement. As the court previously explained, plaintiffs' claims do not relate to a breach of that Franchise Agreement, nor could they so relate, considering that plaintiffs are non-parties to that agreement. Plaintiffs' claims in this action are based on Petland Summerville's alleged negligent sale of unhealthy puppies and related misrepresentations. During its employee's visits to South Carolina, Petland, Inc. neither sold those puppies nor made any representations to plaintiffs regarding the puppies. Therefore, Petland, Inc.'s employee's visit to South Carolina is irrelevant to the jurisdictional inquiry.

After reviewing plaintiffs' evidence derived from jurisdictional discovery, the court finds that plaintiffs failed to make a prima facie showing to survive the instant jurisdictional challenge. Petland, Inc.'s franchise-related South Carolina contacts are not sufficiently related to plaintiffs' claims to satisfy the second prong of the specific jurisdiction test. As such, the court need not reach the third prong to determine whether the court's exercise of personal jurisdiction over Petland, Inc. would be constitutionally reasonable. Because the exercise of specific or general jurisdiction over Petland, Inc. would not comport with Due Process, the court dismisses Petland, Inc. from this action.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss for lack of personal jurisdiction.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**December 6, 2021**
**Charleston, South Carolina**