# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| MEGAN and TIM MADDEN; NICOLE and PETER CURRY; LAURA WILLIAMS; KRISTA JOHNSON; KAYLA BRITTON; MICHAEL BIRREL; SHATARA BROWN; STEPHANIE AIKEN; TRACY and QUINN WILLIAMS; ROBERT and HEIDI KLIES; SCOTT and ASHLEIGH PARR; BRANDON and ALYSSA FINLEY; and SUMMER GARRIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:20-cv-02953-DCN |
| vs. | ) ) ) | **ORDER** |
| PETLAND SUMMERVILLE, LLC; BRAD PARKER; LAMAR PARKER; and KRISTEN PARKER | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on Defendant Petland Summerville's LLC ("Petland Summerville") motion to dismiss, ECF No. 91. For the reasons set forth below, the court grants in part and denies in part the motion.

## I.   BACKGROUND

Plaintiffs Megan and Tim Madden, Nicole and Peter Curry, Laura Williams, Krista Johnson, Kayla Britton, Michael Birrell, Shatara Brown, Stephanie Aiken, Tracy and Quinn Williams, Robert and Heidi Klies, Scott and Ashleigh Parr, Brandon and Alyssa Finley, and Summer Garris ("plaintiffs") are South Carolina citizens who purchased dogs from a franchisee-owned and operated pet store in Summerville, South Carolina—Petland Summerville, LLC ("Petland Summerville"). Plaintiffs allege that the

1

purchased dogs later developed various illnesses that were attributable to the breeding practices of the various breeders who sold to Petland Summerville. Plaintiffs further allege that they were enticed into purchasing these dogs based on representations made by employees of Petland Summerville that the dogs came from reputable breeders and were healthy.

On July 15, 2020, plaintiffs filed suit against Petland Summerville and its alleged owners and managers, defendants Brad Parker, Lamar Parker, and Kristen Parker (the "Parkers") (collectively, "defendants").[1] Plaintiffs assert the following causes of action against defendants: negligence; gross negligence; negligent misrepresentation; breach of contract; breach of contract accompanied by a fraudulent act; constructive fraud; fraudulent misrepresentation; intentional infliction of emotional distress; and violation of the South Carolina Unfair Trade Practices Act. On May 4, 2022, defendants filed a motion to dismiss for failure to state a claim. ECF No. 91. On May 25, 2022, plaintiffs responded, ECF No. 92, and on June 9, 2022, defendants replied, ECF No. 94. As such, the motion to dismiss has been fully briefed and is ripe for the court's review.

## II. STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the

---

[1] Plaintiffs initially named Petland Inc. as a defendant but the court subsequently dismissed that entity from the action for lack of personal jurisdiction.

merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pled allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

Defendants request that the court dismiss this action for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Defendants argue that all claims against them should be dismissed for two reasons. First, defendants assert that a South Carolina statute, S.C. Code § 47-13-160, provides the exclusive remedy for the sale of sick dogs in this state and that plaintiffs cannot recover thereunder because they failed to satisfy the pre-suit requirements of that statute. Alternatively, defendants argue that plaintiffs' causes of action in tort must be dismissed based on the economic loss doctrine. The court discusses each argument in turn below.

3

### A.  S.C. Code § 47-13-160.

Defendants first ask that the court dismiss plaintiffs' claims as barred by S.C. Code § 47-13-160, referred to by the parties as the "pet lemon law." Section 47-13-160 sets forth certain procedures and remedies for the sale of sick registered companion dogs and cats in South Carolina. Specifically, the statute sets forth the rights of purchasers if their dog or cat proves to be unfit for purchase due to a non-congenital, congenital, or hereditary condition. See S.C. Code § 47-13-160(B). It states that a purchaser may elect one of four remedy options if a licensed veterinarian certifies the animal to be unfit for purchase:

> (1) the right to return the animal and receive a refund of the purchase price, including sales tax, and reimbursement of the veterinary fees incurred before the purchaser's receipt of the veterinary certification. The seller's liability for veterinary fees under this option must not exceed fifty percent of the purchase price, including sales tax, of the animal;
>
> (2) the right to retain the animal and to receive reimbursement for veterinary fees incurred before the purchaser's receipt of the veterinary certification and the future cost of veterinary fees to be incurred in curing or attempting to cure the animal. The seller's liability under this option must not exceed fifty percent of the purchase price, including sales tax, of the animal;
>
> (3) the right to return the animal and to receive in exchange an animal of the purchaser's choice, of equivalent value, and reimbursement of veterinary fees incurred before the purchaser's receipt of the veterinary certification. The seller's liability for veterinary fees under this option must not exceed fifty percent of the purchase price, including sales tax, of the animal;
>
> (4) the right to receive a full refund of the purchase price, including sales tax, for the animal or, in exchange, an animal of the purchaser's choice of equivalent value, and reimbursement of veterinary fees incurred before the death of the animal if the death occurs within fourteen days of the date the purchaser takes possession, except where death occurs by accident or injury sustained during that period. The seller's liability for veterinary fees under

>    this option must not exceed fifty percent of the purchase price, including sales tax, of the animal.

S.C. Code § 47-13-160(B).

The statute requires the seller at the time of the sale to provide the purchaser with a proof of vaccination form and an "Election of Options" form setting forth these four remedies. See S.C. Code § 47-13-160(A). If a purchaser presents a veterinary certification of unfitness to the seller, the seller must confirm the purchaser's remedy election in writing in the "Election of Options" form and provide a copy to the purchaser. See S.C. Code § 47-13-160(D). If the seller refuses to refund the purchase price and fees corresponding to the elected remedy, the statute provides that a purchaser may initiate a civil action. See S.C. Code § 47-13-160(F). It further provides that "[t]he court, upon a finding that the seller violated the provisions of this section, shall award the purchaser two times the amount of the purchase price and fees, attorney's fees as determined by the court, and costs." Id.

It is undisputed that plaintiffs have not followed the procedure outlined in the § 47-13-160 as a condition precedent to filing suit. Specifically, plaintiffs do not allege that they presented a veterinary certificate of unfitness to Petland Summerville, that they made an election of remedy upon presenting that certificate, or that Petland Summerville refused to refund the purchase price and fees corresponding to any such election. Plaintiffs argue that this procedure is unnecessary because they have not pursued a cause of action for a violation of § 47-13-160. Defendants, on the other hand, maintain that § 47-13-160 provides an exclusive remedy for the sale of unhealthy puppies, and, as such, plaintiffs do not have a right to file an action until they have complied with the statute's pre-filing conditions. To determine whether the failure to satisfy the pre-filing

conditions precludes plaintiffs from recovery, the court must determine whether § 47-13-160 is an exclusive remedy for plaintiffs' allegations set forth in their complaint.

When interpreting a state law, a federal court applies the statutory construction rules applied by the state's highest court. In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir. 2009) (citing Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007)). Under South Carolina law, "[a]ll rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." State v. Sweat, 688 S.E.2d 569, 575 (S.C. 2010) (quoting Broadhurst v. City of Myrtle Beach Election Comm'n, 537 S.E.2d 543, 546 (S.C. 2000)). The words of a statute should be given "their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand that statute's operation." Sweat, 688 S.E.2d at 575 (internal citation omitted). Moreover, legislative intent should be ascertained by examining the plain language of the statute. Hardee v. McDowell, 673 S.E.2d 813, 817 (S.C. 2009) ("What a legislature says in the text of a statute is considered the best evidence of legislative intent or will.").

The court finds that § 47-13-160 is not the exclusive remedy for the allegations set forth in plaintiffs' complaint. The statute does not provide that the remedies enumerated therein are "exclusive" or that it precludes any other causes of action or damages arising from the sale of an unhealthy pets. The parties have not cited any evidence that the legislature intended the remedies provided in the statute to be exclusive, and the court likewise was unable to locate such evidence. Notably, several South Carolina statutes in other areas of law provide an exclusive remedy and expressly include

6

a provision to that effect. For example, the South Carolina Worker's Compensation Act includes an exclusive remedy provision that limits an employer's remedies against his or her employer for work-related injuries and disallows tort remedies against the employer. See Mendenall v. Anderson Hardwood Floors, LLC, 738 S.E.2d 251, 253 (S.C. 2013) ("As noted above, section 42-1-540 of the Act is an exclusivity provision, disallowing tort suits against the employer and limiting the injured employee's rights and remedies to those provided by the Act."). Likewise, the South Carolina Tort Claims Act "specifically notes that it is the exclusive remedy for any tort committed by a governmental employee." Wimberly v. Barr, 597 S.E.2d 853, 857 (S.C. Ct. App. 2004). Accordingly, South Carolina courts find that "the Legislature intended to create an exclusive remedy under the Tort Claims Act." Id. In light of the South Carolina legislature's inclusion of such exclusivity provisions in other statutes, the court finds the absence of such a provision in § 47-13-160 particularly telling as to the legislature's intent that the statute would not serve as an exclusive remedy. See id.

The South Carolina Court of Appeals reached a similar conclusion in Wimberly. There, a timber statue provided that a landowner may institute a civil action to recover up to three times the fair market value of the timber wrongfully cut by another. Even though the plain reading of the statute provided a specific remedy related to wrongfully cut timber, the court determined that "a clear reading of the statute does not prohibit a landowner from recovering other types of damages." Id. The court supported its holding by noting that "[n]othing in the statute provides that it is the exclusive remedy for all kinds of damages." Id. Accordingly, the court did not limit plaintiff's recovery in the action to three times the fair market value of the cut timber. Instead, it permitted the

7

plaintiff to proceed under a cause of action for trespass to recover damages related to the value of the hunting lease and damage to the fair market value of the property as a whole. The court reasoned that "[w]hile [the plaintiff's] recovery of damages for the timber may be limited to three times the fair market value of the timber removed, the statute does not express an intent by the Legislature that all damages resulting from that removal be capped at three times the fair market value." Id. It further reasoned that "to restrict [the plaintiff's] recovery to $12,490.92, when there is evidence in the record of damages in excess of $33,000.00 in actual damages found by the jury, would supplant the existing common-law right to recover for all damages associated with another's wrongdoing." Id.

Consistent with Wimberly, the fact that § 47-13-160 does not include an exclusivity provision illustrates that the legislature did not intend the statutory remedies to be exclusive or supplant other causes of action associated with the sale of sick puppies. Just as the court in Wimberly permitted the plaintiff to pursue a cause of action and related damages for trespass that were not contemplated by the timber statute, here the court will permit plaintiffs to pursue causes of action and remedies related to the sale of unhealthy puppies even though they are not contemplated by the pet lemon law. This result best comports with the purpose of the statute. Although the court has been unable to glean much information from the legislative history, the pet lemon law was enacted "to require a pet dealer, pet shop, or pet breeder to provide a statement from a licensed veterinarian that the animal has been examined and is free of disease and deformity" and "to provide remedies." S. Res. 142, 109th Gen. Assemb. (S.C. 1993). It follows, then, that the statute most likely was intended to be a consumer protection measure to address the concern of sale of diseased pets and to provide remedies to consumers for such

purchases. It does not appear that the statute was intended to bar purchasers from any other form of recovery or causes of action in disputes with sellers. As such, the court finds that plaintiffs' failure to satisfy § 47-13-160's pre-filing requirements does not bar them from recovery in this action.

### B. Economic Loss Doctrine

Defendants next argue that plaintiffs' tort claims are barred by the economic loss doctrine. The court agrees and dismisses plaintiffs' tort claims. South Carolina's economic loss doctrine "developed in product liability cases to assist in determining whether contract or tort theories were applicable to a given situation." Bishop Logging Co. v. John Deere Indus. Equip. Co., 455 S.E.2d 183, 188 (S.C. App. 1995); see also Sapp v. Ford Motor Co., 687 S.E.2d 47, 49 (S.C. 2009) (explaining that the purpose of South Carolina's economic loss doctrine "is to define the line between recovery in tort and recovery in contract"). The doctrine provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." Bishop Logging, 455 S.E.2d at 188. "Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract." Id. As the South Carolina Supreme Court has explained, "[c]ontract law seeks to protect the expectancy interests of the parties," while "[t]ort law . . . seeks to protect safety interests and is rooted in the concept of protecting society as a whole from physical harm to person or property." Sapp, 687 S.E.2d at 49. Pursuant to this concept, "[w]here a product damages only itself, tort law provides no remedy and the action lies in contract'

but when personal injury or other property damage occurs, a tort remedy may be appropriate." Id.

Importantly, in South Carolina, as in many states, "[p]ets are considered personal property." Kirchner v. Kirchner, 2005 WL 7083859, at *4 (S.C. Ct. App. Mar. 23, 2005); Richardson v. Fla. Cent. & P.R. Co., 33 S.E.2d 466, 466 (S.C. 1899) (same); Schor v. N. Braddock Borough, 801 F. Supp. 2d 369, 379 (W.D. Pa. 2011) (same); McMahon v. Craig, 97 Cal. Rptr. 3d 555, 558 (Cal. 2009), as modified on denial of reh'g (Aug. 31, 2009) (same). Accordingly, in cases involving injuries to a pet, "courts have limited the award of damages to a dog's market value" or the pecuniary loss to the owner for the injuries sustained. Bales v. Judelsohn, 2005 WL 7084365, at *1 (S.C. Ct. App. Aug. 30, 2005) (citing 4 Am. Jur. 2d Animals §§ 6 and 165 (1995)). For example, in Bales, the South Carolina Court of Appeals held that "South Carolina law does not support a cause of action for emotional distress for injury to one's pet" and further held "that a claim for lost wages resulting from injury to an animal is not actionable because a dog is considered personal property under our law." 2005 WL 7084365 at *1. The court nevertheless awarded damages for reimbursement of the entirety of the owner's veterinary bill as pecuniary damages flowing from injury to property. Although this approach may seem to take an insensitive—or perhaps overly harsh—view of pet ownership, as one court in this state recently observed, "[u]ntil either [the South Carolina] legislature or [] Supreme Court expressly recognizes the right of a pet owner to seek non-economic damages for the death or injury of a pet, this Court must rule as a matter of law that Plaintiff in the present case cannot seek damages for emotional distress, mental anguish, or anxiety at trial." Fowler v. Fedex Ground Package Sys., Inc.,

2019 WL 9573828, at *1 (S.C. Com. Pl. Sep. 23, 2019). Accordingly, it is clear that plaintiffs cannot state a claim in this action for intentional infliction of emotion distress under South Carolina law, and the court dismisses that claim.

Guided by the principle that pets are viewed as personal property, plaintiffs are likewise barred from pursuing negligence and gross negligence claims under the economic loss doctrine. As alleged, there was no personal safety issue resulting from Petland Summerville's alleged sale of unhealthy puppies. And because individuals may not recover in emotional distress, mental anguish, anxiety, or other non-pecuniary damages, plaintiffs have suffered no personal injury cognizable under South Carolina law. Moreover, the only property injury allegedly suffered by plaintiffs is the "injury" to the puppies themselves and related veterinary expenses. In this respect, the allegedly sick puppies may be likened to a product that only injures itself. See Sapp, 687 S.E.2d at 49. In other words, plaintiffs' only tenable injury is effectively their frustrated expectations in the sale—namely, the puppies' failure to live up to plaintiffs' health expectations. Accordingly, the economic loss doctrine provides that plaintiffs' recovery is in contract and not in tort. The court therefore dismisses plaintiffs' negligence, gross negligence, and negligent misrepresentation claims. See Besley v. FCA US, LLC, 2016 WL 109887, at *5 (D.S.C. Jan. 8, 2016) ("[D]efendant is entitled to dismissal of plaintiff's tort claims [regarding his pickup truck] for negligent misrepresentation and negligence per se pursuant to the economic loss rule"); S.C. Elec. & Gas Co. v. Westinghouse Elec. Corp., 826 F. Supp. 1549, 1557 (D.S.C. 1993) ("[A] commercial transaction governed by a contract where the loss alleged is purely economic and the cause of action is for mere negligent misrepresentation—the economic loss rule bars recovery for losses that have

11

occurred from the product's failure to live up to the purchasers' expectations."); Weinreich v. Toyota Motor Sales, U.S.A., Inc., 2019 WL 5684376, at *4 (D.S.C. Oct. 31, 2019) (dismissing a claim for negligent misrepresentation as barred by the economic loss doctrine).

Because the court finds that plaintiffs' recovery is in contract, plaintiffs' breach of contract and breach of contract accompanied by a fraudulent act claims remain pending. Likewise, the constructive fraud and fraudulent misrepresentation claims remain pending. As one court in this district recently explained, the law regarding application of the economic loss doctrine to fraud claims is unsettled. Harrell v. BMW of N. Am., LLC, 517 F. Supp. 3d 527, 540 (D.S.C. 2021) ("[T]he court is unable to find any settled statement regarding whether a fraudulent concealment claim, such as the one asserted here, should be dismissed under [the economic loss doctrine]."). Nevertheless, as that court also observed, South Carolina jurisprudence suggests that causes of actions for fraud are not barred by the economic loss doctrine. Id. (citing In re MI Windows and Doors, Inc., 2012 WL 5384922, at *3 n.2 (D.S.C. Nov. 1, 2012)); see also Trevillvan v. APX Alarm Sec. Sys., Inc., 2011 WL 11611, at *8 (D.S.C. Jan. 3, 2011) ("With respect to fraud, a party induced to enter a contract by fraud may elect to sue in contract or in tort."); Enhance-It, LLC. v. Am. Access Techs., Inc., 413 F. Supp. 2d 626, 631 (D.S.C. 2006) (declining to dismiss a fraud claim under the economic loss doctrine where "plaintiff has alleged that defendant violated a duty imposed by tort law, i.e., the duty not to commit fraud"). Accordingly, the court in Harrell permitted the plaintiff's fraudulent concealment claim to proceed notwithstanding the economic loss doctrine. This court

follows suit and likewise permits plaintiffs' claims for constructive fraud and fraudulent misrepresentation to proceed.

The same case is instructive with respect to plaintiffs' claim under the South Carolina Unfair Trade Practices Act ("SCUPTA"). In Harrell, the court noted that,

> As to the SCUTPA, the case law is even less settled. At least one court in this District has rejected the argument that a SCUTPA claim is not a tort. See Advance Nursing Corp. v. S.C. Hosp. Ass'n, No. 6:16-cv-160, 2016 WL 6157490, at *5–*6 (D.S.C. Oct. 24, 2016) ("Plaintiff is mistaken [in arguing that torts are creatures of common law and SCUTPA arises under statute], however, as the Court notes the South Carolina Supreme Court has treated claims for violation of the SCUTPA as torts." (citing Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry, 403 S.C. 623, 743 S.E.2d 808, 815 (2013) (treating SCUTPA claim as tort for purposes of South Carolina Tort Claims Act))). In another case though, the South Carolina Supreme Court seemed to acknowledge distinctions between a statutory SCUTPA claim and common law torts: "[T]he conduct prohibited by the SCUTPA is not merely duplicative of that addressed by the law of torts, contracts, and warranties." Reynolds v. Ryland Group, Inc., 340 S.C. 331, 531 S.E.2d 917, 921 (2000).

517 F. Supp. 3d at 541 (alterations in original). In light of the legal uncertainty on the matter, the court in Harrell declined to find the plaintiff's SCUTPA claim barred by the economic loss doctrine as a matter of law at the motion to dismiss stage. Id. Again, the court is persuaded by the reasoning in Harrell and will permit plaintiffs' SCUTPA claim to proceed.

## IV.    CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** defendants' motion to dismiss.

13

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 18, 2022
Charleston, South Carolina**

14